**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LAWRENCE ZUCKER, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>ANDEAVOR, GREGORY J. GOFF, RODNEY F. CHASE, PAUL L. FOSTER, EDWARD G. GALANTE, DAVID LILLEY, MARY PAT MCCARTHY, J.W. NOKES, WILLIAM H. SCHUMANN, III, JEFF A. STEVENS, SUSAN TOMASKY, MICHAEL E. WILEY, PATRICK Y. YANG, MARATHON PETROLEUM CORPORATION, MAHI INC., and MAHI LLC,<br><br>                              Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Lawrence Zucker ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Andeavor ("Andeavor" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on Andeavor's website concerning the Company's public statements; and (d) review of other publicly available information concerning Andeavor and Defendants.

## NATURE OF THE ACTION

1.     This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Andeavor against the Company and the members of the Company's board of directors (the "Board") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of Andeavor.

2.     On April 29, 2018, the Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Marathon Petroleum Corporation ("MPC"), Andeavor, Mahi Inc., and Mahi LLC (the "Proposed Merger").

3.     In connection with the Proposed Merger, each share of Andeavor common stock issued and outstanding will have the right to receive either 1.87 shares of MPC common stock, which is referred to as the stock consideration, or $152.27 in cash, which is referred to as the cash consideration. Elections to receive cash consideration and stock consideration are subject to allocation and proration procedures set forth in the Merger Agreement to ensure that the total number of shares of Andeavor common stock converted into the right to receive cash consideration is equal to 22,885,359 shares, which is referred to as the cash election number, and the remaining shares of Andeavor common stock to be converted in the Proposed Merger will be converted into the right to receive stock consideration (the "Merger Consideration").

4.     The consummation of the Proposed Merger is subject to certain closing conditions, including the approval of the stockholders of Andeavor. The Company expects the Proposed Merger to close in the second half of 2018.

5.     On May 29, 2018, in order to convince Andeavor shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a joint materially incomplete and

misleading registration statement, which was filed by MPC on Form S-4 with the SEC (the "S-4" or the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

6.      While Defendants are touting the fairness of the Merger Consideration to the Company's stockholders in the S-4, they have failed to disclose certain material information that is necessary for stockholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the S-4 incomplete and misleading.

7.      It is imperative that the material information that has been omitted from the S-4 is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 and Regulation G, 17 C.F.R. § 244.100.

8.      Plaintiff seeks to enjoin Defendants from holding the stockholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Andeavor stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

10.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (i) the conduct at issue had an effect in this District; (ii) Andeavor's principal executive offices are located in this District at 19100 Ridgewood Parkway, San Antonio, Texas, 78259; (iii) each of the Individual Defendants, and Company officers and/or directors, either resides in this District or has extensive contacts within this District; (iv) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (v) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (vi) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

12.     Plaintiff is, and at all relevant times has been, an Andeavor stockholder.

13.     Defendant Andeavor is a Delaware corporation whose registered agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808. Andeavor maintains its principal executive offices located at 19100 Ridgewood Pkwy, San Antonio, Texas. Andeavor's common stock is listed on the NASDAQ under the ticker symbol "ANDV."

14.     Defendant Gregory James Goff ("Goff") is Chairman, President & Chief Executive Officer of the Company.

15.     Defendant Jeff A. Stevens ("Stevens") is and has been a director of the Company at all times during the relevant time period.

16.     Defendant Paul L. Foster ("Foster") is and has been a director of the Company at all times during the relevant time period.

17.     Defendant William H. Schumann ("Schumann") is and has been a director of the Company at all times during the relevant time period.

18.     Defendant Edward G. Galante ("Galante") is and has been a director of the Company at all times during the relevant time period.

19.     Defendant Jimmy W. Nokes ("Nokes") is and has been a director of the Company at all times during the relevant time period.

20.     Defendant Mary Pat McCarthy ("McCarthy") is and has been a director of the Company at all times during the relevant time period.

21.     Defendant David Lilley ("Lilley") is and has been a director of the Company at all times during the relevant time period.

22.     Defendant Rodney Frank Chase ("Chase") is and has been a director of the Company at all times during the relevant time period.

23.     Defendants Goff, Stevens, Foster, Schumann, Galante, Nokes, McCarthy, Lilley, and Chase are collectively referred to herein as the "Individual Defendants."

24.     The Individual Defendants, along with Andeavor, are collectively referred to as the "Defendants."

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Andeavor (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

26.     This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable. As of May 3, 2018, there were approximately 151,122,485 shares of Andeavor common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Andeavor will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i.    whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the S-4 in violation of Section 14(a) of the Exchange Act;

ii.    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading S-4.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class;

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of

the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

27.    Andeavor engages in the refining and marketing of petroleum products. It operates through the following segments: Refining, Logistics, and Marketing. The Refining segment buys and refines crude oil and other feed stocks into transportation fuels, such as gasoline and gasoline blend stocks, jet fuel and diesel fuel, as well as other products, including heavy fuel oils, liquefied petroleum gas and petroleum coke for sale in bulk markets to a wide variety of customers within Andeavor's markets. The Logistics segment includes crude oil and natural gas gathering assets, natural gas and natural gas liquid processing assets, and crude oil and refined products terminaling, transportation and storage assets acquired from Andeavor and third parties. The Marketing segment sells transportation fuels through branded and unbranded channels. Its brand portfolio includes ARCO, Shell, Exxon, Mobil, USA Gasoline, Rebel, and Tesoro. The Company was founded by West V. Robert, Jr. in 1968 and is headquartered in San Antonio, Texas.

### Background of the Proposed Merger

28.    In March 2017, Defendant Goff and Gary R. Heminger, the Chairman and Chief Executive Officer of MPC, met following an industry event and discussed the possibility of

exploring a strategic transaction between the companies. Each agreed that further discussion with their respective boards was necessary prior to any further talks.

29.    Beginning in April 2017, Goldman Sachs, Andeavor's long-time financial advisor on potential strategic transactions provided to Andeavor certain publicly available financial data regarding a potential strategic combination with MPC following a request by the Company's management.

30.    In June 2017, MPC management and Barclays discussed a potential engagement of Barclays as a financial advisor in connection with any potential transaction arising between MPC and the Company. Later that month, on June 27, 2017, and June 28, 2017, Defendant Goff and Mr. Heminger again met to discuss the possibility of exploring a strategic transaction between the two companies.

31.    In July 2017, Sullivan & Cromwell LLP ("S&C"), Andeavor's legal counsel in connection with potential strategic transactions, was updated regarding the possibility of a potential strategic combination with MPC and was asked to prepare a mutual confidentiality agreement.

32.    On July 28, 2017, the Board held a meeting to discuss a potential strategic transaction between the Company and MPC. The Board expressed its initial interest in exploring the possibility of a potential transaction with MPC and authorized Defendant Goff, Mr. Sterin, Executive Vice President and Chief Financial Officer of Andeavor, and Ms. Rucker, Executive Vice President, General Counsel and Secretary of Andeavor to engage with MPC regarding the potential for such a transaction.

33.    On August 15, 2017, Andeavor and MPC executed a mutual confidentiality agreement with customary rights and protections and mutual standstill provisions in order to begin

to exchange certain preliminary non-public information to facilitate the evaluation, negotiation and implementation of a potential strategic combination between the two companies.

34.     On August 31, 2017, preliminary synergies assessments were completed, which, informed by the companies' respective subject matter experts identifying synergies by business component, concluded that the synergies from a strategic combination between MPC and Andeavor could exceed $1 billion on an annual basis.

35.     In September 2017, MPC advised Jones Day, its legal counsel in connection with previous merger and acquisition transactions, that a potential strategic transaction with Andeavor was under consideration and requested certain legal services in support thereof.

36.     On September 7, 2017, Messrs. Goff and Sterin held a call with representatives of Goldman Sachs, which had been approached by Andeavor management as a potential financial advisor in connection with the potential strategic combination, to discuss certain preliminary financial considerations related to the potential transaction with MPC and in order to consider and evaluate whether Goldman Sachs could serve as a financial advisor to Andeavor in connection with the transaction, subject to Goldman Sachs providing a disclosure letter regarding certain of its relationships with Andeavor, MPC, Andeavor Logistics and MPLX, and Andeavor board approval.

37.     On September 24, 2017, the Board held a meeting via telephone and Defendant Goff updated the Board on the preliminary results of the synergies analysis. During the meeting, the Board discussed and determined to engage Goldman Sachs as the Company's financial advisor in connection with consideration of a potential transaction with MPC. At the close of the meeting, the Board confirmed its support for continuing discussions with MPC and discussed next steps.

38.     During the weekend of September 30, 2017, Defendant Goff and Mr. Heminger discussed a potential timeline for the transaction and agreed to target mid-November 2017 for signing of a definitive agreement should discussions proceed favorably. They also discussed, at a conceptual level, matters related to corporate governance of the combined company, including board composition, and the possible relative ownership of each company's stockholders in the combined company.

39.     On October 25, 2017, the MPC board met and Mr. Heminger provided an update as to the status of discussions between the MPC and Andeavor senior management teams. Mr. Heminger informed the MPC board that given the then-current relative market valuations of the two companies, reaching an agreement on terms acceptable to both parties would be challenging. The MPC board concluded that the synergies presented by the potential transaction were attractive and that perhaps the market valuations of the respective companies would support pursuit of the project in the future.

40.     On October 27, 2017, Defendant Goff and Mr. Heminger spoke by telephone and agreed to suspend the discussions of a potential combination between Andeavor and MPC in order for each company to focus on its respective business objectives.

41.     On November 8, 2017, the Company's Board held an in-person meeting, during which Defendant Goff provided the Board with an update regarding the status of the potential transaction with MPC, noting that the respective CEOs had agreed to suspend discussions at such time.

42.     At meetings of the Board on February 13, 2018, and February 14, 2018, Defendant Goff discussed the possibility of resuming the discussions with MPC regarding a potential transaction and the Board supported the resumption of such discussions.

43.     On February 23, 2018, Defendant Goff and Mr. Heminger met in person and determined to reinitiate the discussion of a potential transaction between the Company and MPC.

44.     On March 22, 2018, the Board held a meeting where Defendant Goff provided an update regarding the potential transaction with MPC, including due diligence, work to refresh the synergies analysis that had previously been done and a potential timeline for signing and announcement of the transaction. Representatives of S&C also attended portions of the meeting. The Board expressed its continued support for discussion of the potential transaction with MPC.

45.     On March 30, 2018, Defendant Goff and Mr. Heminger discussed the potential transaction with input received from their respective advisors and boards of directors. Both decided to move forward with the transaction with a targeted signing date, should discussions proceed favorably, at or around the end of April 2018.

46.     On April 6, 2018, Defendant Goff and Mr. Heminger met to discuss the key terms of the transaction. During this meeting, the two discussed an exchange ratio of 1.87 MPC shares for each issued and outstanding Andeavor share, as well as various corporate governance issues.

47.     On April 10, 2018, and April 11, 2018, Defendant Goff and Mr. Heminger met and agreed, subject to the approval of their respective boards of directors, to the exchange ratio of 1.87 and a consideration mix of either 85% MPC stock and 15% cash or 90% MPC stock and 10% cash. Discussions continued concerning board composition and office location. The two agreed, subject to approval of their respective boards of directors, that Mr. Heminger would lead the combined company as its chief executive officer, the headquarters would be located in Findlay, Ohio, and that four directors from the Andeavor board would be appointed to the MPC board upon completion of the transaction.

48.    On April 15, 2018, the Board held an in-person meeting with representatives from S&C and Goldman Sachs in attendance. A representative from S&C reviewed with the Andeavor board their fiduciary duties under Delaware law in connection with the consideration of a transaction with MPC. Defendant Goff discussed with the Board the potential impact of the transaction on the industry and Andeavor's positioning in the industry and long-term direction. Representatives of Goldman Sachs discussed with the Board financial analyses of the potential strategic combination and potential alternative strategic options. A representative from S&C provided the Board with a preliminary overview of the initial draft of the merger agreement and some open issues.

49.    Also on April 15, 2018, the Company and Goldman Sachs entered into an engagement letter for Goldman Sachs to be the financial advisor to Andeavor in connection with its evaluation of a potential strategic transaction with MPC.

50.    A day later, on April 16, 2018, Defendant Goff and Mr. Heminger spoke via telephone to update one another on feedback received from their respective boards. During the call, Defendant Goff proposed that Andeavor stockholders should be entitled to elect to receive stock consideration or cash consideration for each share of Andeavor common stock held, subject to a cap of 10% or 15% on the number of shares of Andeavor common stock in respect of which Andeavor stockholders could elect to receive cash consideration. The parties also discussed certain provisions in the merger agreement, including MPC's right to terminate the agreement after a certain date, MPC's obligations in seeking regulatory approvals and the termination fee payable by each company.

51.    On April 24, 2018, S&C delivered a revised draft of the merger agreement to Jones Day and continued to exchange drafts with Jones Day until April 29, 2018, to resolve the final

open issues relating to the merger agreement. The material open issues that were resolved during this time period included: (i) the amount of the termination fee(s) payable by MPC and Andeavor and the circumstances in which they would become payable, (ii) the undertakings required of MPC to obtain governmental approvals for the transaction, (iii) the scope of Andeavor's obligation to provide certain financial assistance and cooperation in connection with MPC's financing activities, (iv) the scope of MPC's obligation in appointing four Andeavor directors to MPC's board following closing of the transaction, (v) the closing conditions related to Andeavor's representations and warranties made in the merger agreement and (vi) the extent to which the non-solicitation provisions were applicable to Andeavor's non-affiliate representatives.

52.     Between April 16 and April 29, 2018, Defendant Goff and Mr. Heminger continued to have discussions regarding various aspects of the transaction, including open issues in the merger agreement and commitments with respect to employee benefits, retention and compensation, and Mr. Goff's role with the combined company. On April 28, 2018, the two agreed that Defendant Goff would serve as Executive Vice Chairman of the combined company. The parties thereafter negotiated the terms of Defendant Goff's letter agreement in order for him to assume the role of Executive Vice Chairman after the closing of the merger.

53.     On April 29, 2018, the Board held an in-person meeting for the purpose of considering the proposed transaction with MPC. Members of the Andeavor senior management team and representatives of Goldman Sachs and S&C were present. Defendant Goff updated and reviewed with the Andeavor board the status of the discussions with MPC, noting that the open issues in the merger agreement were resolved. A representative of S&C reviewed with the Andeavor board of directors its fiduciary duties. After review, the members of the Board unanimously (i) determined that the merger agreement, the voting agreement, the merger and the

other transactions contemplated thereby were fair to and in the best interests of Andeavor and its stockholders, (ii) approved and declared it advisable that Andeavor enter into the merger agreement and the voting agreement, substantially in the form presented to the board and (iii) directed that the merger agreement be submitted to Andeavor's stockholders for their adoption.

54.    Later on April 29, 2018, the merger agreement was executed and delivered by MPC and Andeavor.

**The Company Announces the Proposed Merger**

55.    On April 30, 2018, the Company and MPC issued a joint press release announcing the Proposed Merger. The press release stated, in pertinent part:

> **FINDLAY, Ohio, and SAN ANTONIO, Texas–April 30, 2018**–
> Marathon Petroleum Corp. (NYSE: MPC) and Andeavor (NYSE: ANDV) today announced that they have entered into a definitive merger agreement under which MPC will acquire all of ANDV's outstanding shares, representing a total equity value of $23.3 billion and total enterprise value of $35.6 billion, based on MPC's April 27, 2018, closing price of $81.43. ANDV shareholders will have the option to choose 1.87 shares of MPC stock, or $152.27 in cash subject to a proration mechanism that will result in 15 percent of ANDV's fully diluted shares receiving cash consideration. This represents a premium of 24.4 percent to ANDV's closing price on April 27, 2018. MPC and ANDV shareholders will own approximately 66 percent and 34 percent of the combined company, respectively. The transaction was unanimously approved by the board of directors of both companies and is expected to close in the second half of 2018, subject to regulatory and other customary closing conditions, including approvals from both MPC and ANDV shareholders. The headquarters will be located in Findlay, Ohio, and the combined business will maintain an office in San Antonio, Texas.
>
> "This transaction combines two strong, complementary companies to create a leading U.S. refining, marketing, and midstream company, building a platform that is well-positioned for long-term growth and shareholder value creation," said Gary R. Heminger, MPC chairman and chief executive officer. "Each of our operating segments are strengthened through this transaction, as it geographically diversifies our refining portfolio into attractive markets, increases access to advantaged feedstocks, enhances our

midstream footprint in the Permian basin, and creates a nationwide retail and marketing portfolio that will substantially improve efficiencies and enhance our ability to serve customers.

"Importantly, we expect this transaction will be meaningfully accretive for shareholders, generating approximately $1 billion of tangible annual run-rate synergies within the first three years and significantly enhancing our long-term cash flow generation profile," said Heminger. "Given the confidence in the robust cash flow expected to be generated by the combined business, our board also authorized an incremental $5 billion of share repurchases. As a combined company, we will continue our balanced approach to investing in the business and returning cash to our investors, while maintaining our commitment to an investment-grade credit profile."

\* \* \*

At closing, Greg Goff, ANDV chairman and chief executive officer, will join MPC as executive vice chairman. As executive vice chairman and an executive of MPC following closing, Goff will provide leadership and be integrally involved in the strategy for the combined company. Goff, along with three other Andeavor directors, will also join the board of directors of Marathon Petroleum. "With significantly increased scale, a strong platform for our midstream businesses and a leading nationwide retail and marketing distribution portfolio, the combined company presents tremendous value enhancement and growth opportunities for all shareholders," said Goff. "This strategic combination provides our shareholders with a premium for their shares and the opportunity to benefit from substantial future value creation at MPC. As the largest refiner by capacity in the U.S., with a best-in-class operating capability and a strong capital structure, the combined company will be exceptionally well-positioned to deliver on its synergy and earnings targets. We look forward to working together to deliver on the full potential of this powerful combination."

\* \* \*

**Transaction Terms**

Under the terms of the agreement, ANDV shareholders will have the option to elect 1.87 shares of MPC stock or $152.27 in cash per share subject to a proration mechanism that will result in 15 percent of ANDV's fully diluted shares receiving cash consideration. The stock portion of the consideration received by Andeavor's shareholders is expected to be tax-free.

**Approvals and Timing**

The transaction has been unanimously approved by the boards of directors of both companies. The transaction is expected to close in the second half of 2018 and is subject to customary closing conditions, including approval by ANDV shareholders of the merger, and approval by MPC shareholders of the new MPC shares issued in the transaction. It is also subject to approval pursuant to the Hart- Scott-Rodino Antitrust Improvements Act of 1976 (HSR), and the receipt of other required regulatory approvals.

## The Preclusive Deal Provisions

56.    In addition to failing to conduct a fair and reasonable sales process, the Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for Andeavor.

57.    Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers or even continuing discussions and negotiations with potential acquirers; (ii) an information rights provision that requires the Company to disclose the identity of any competing bidder and to furnish MPC with the terms of any competing bid and confidentiality agreement; (iii) a matching rights provision which gives MPC four (4) business days to match any unsolicited superior acquisition proposal the Board receives; and (iv) a provision that requires the Company to pay MPC a termination fee of $600,000,000 if the Company, among other things, signs an alternative acquisition agreement.

58.    These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Andeavor.

59.    Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that Andeavor's shareholders receive all

material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Merger.

**Interests of the Officers and Directors of Andeavor**
**to Completing the Proposed Merger**

60.    Certain of the officers and/or directors of the Company have significant financial interests in completing the Proposed Merger. The following chart, taken from the S-4, shows the potential payouts to Andeavor's officers and directors as a result of their exchange of shares of Andeavor for the Merger Consideration:

**Golden Parachute Compensation**

| Name | Cash ($) (1) | Equity ($) (2) | Pension/ NQDC ($) (3) | Benefits ($) (4) | Total ($) |
|---|---|---|---|---|---|
| Gregory J. Goff | 15,040,002 | 52,284,745 | 0 | 40,419 | 67,365,166 |
| Steven M. Sterin | 5,334,000 | 10,804,008 | 979,952 | 40,419 | 17,158,379 |
| Keith M. Casey | 4,813,300 | 11,285,470 | 1,101,423 | 40,419 | 17,240,612 |
| Kim K.W. Rucker | 4,794,000 | 8,218,273 | 229,000 | 40,419 | 13,281,692 |
| Cynthia J. Warner | 4,302,000 | 7,694,143 | 730,792 | 40,419 | 12,767,354 |

**Interests of the Financial Advisors to the Proposed Merger**

61.    Goldman Sachs has provided certain investment banking services to Andeavor and its affiliates from time to time for which the Investment Banking Division of Goldman Sachs has received, and may receive, compensation, including having acted as joint bookrunner with respect to the public offering of Andeavor Logistics, an affiliate of Andeavor, and Tesoro Logistics Finance Corp.'s, an affiliate of Andeavor, 6.125% Senior Notes due 2021 (aggregate principal amount $250 million) and 6.375% Senior Notes due 2024 (aggregate principal amount $450 million) in May 2016; as joint lead arranger with respect to a term loan facility for Western Refining, a subsidiary of Andeavor, (aggregate principal amount $500 million) in June 2016; as Western Refining's financial advisor in connection with its acquisition of Northern Tier Energy LP in June 2016; as joint bookrunner with respect to the public offering of 7,500,000 common units representing limited partner interests in Western Refining Logistics, LP, which is referred to

as WNRL, an affiliate of Andeavor, in September 2016; as Andeavor's financial advisor in connection with its acquisition of Western Refining in November 2016; as lead bookrunner with respect to the public offering of Andeavor's 4.750% Senior Notes due 2023 (aggregate principal amount $850 million) and 5.125% Senior Notes due 2026 (aggregate principal amount $750 million) in December 2016; as Andeavor's financial advisor in connection with the merger of Andeavor Logistics and WNRL and the buy-in of Andeavor Logistics's incentive distribution rights announced in August 2017; as joint bookrunner with respect to the public offering of Andeavor Logistics and Tesoro Logistics Finance Corp.'s 3.500% Senior Notes due 2022 (aggregate principal amount $500 million), 4.250% Senior Notes due 2027 (aggregate principal amount $750 million) and 5.200% Senior Notes due 2047 (aggregate principal amount $500 million) in November 2017; as joint bookrunner with respect to the public offering of Andeavor Logistics's 6.875% Series A Fixed-to-Floating Rate Cumulative Redeemable Perpetual Preferred Units (aggregate principal amount $600 million) in November 2017; and as joint bookrunner with respect to Andeavor's public offering of 3.800% Senior Notes due 2028 (aggregate principal amount $500 million) and 4.500% Senior Notes due 2048 (aggregate principal amount $500 million) in December 2017. During the two-year period ended April 29, 2018, Goldman Sachs has recognized compensation for financial advisory and/or underwriting services provided by its Investment Banking Division to Andeavor and/or its affiliates of approximately $64.9 million.

62.    Goldman Sachs also has provided certain investment banking services to MPC and its affiliates from time to time for which the Investment Banking Division of Goldman Sachs has received, and may receive, compensation, including having acted as joint bookrunner with respect to the public offering for MPLX, an affiliate of MPC, of its 3.375% Senior Notes due 2023 (aggregate principal amount $500 million), 4.000% Senior Notes due 2028 (aggregate principal

amount $1.25 billion), 4.500% Senior Notes due 2038 (aggregate principal amount $1.75 billion), 4.700% Senior Notes due 2048 (aggregate principal amount $1.5 billion) and 4.900% Senior Notes due 2058 (aggregate principal amount $500 million) in February 2018. During the two-year period ended April 29, 2018, Goldman Sachs has recognized compensation for financial advisory and/or underwriting services provided by its Investment Banking Division to MPC and/or its affiliates of approximately $3.2 million. Goldman Sachs may also in the future provide investment banking services to Andeavor, MPC and their respective affiliates for which the Investment Banking Division of Goldman Sachs may receive compensation.

63.    Pursuant to a letter agreement dated April 15, 2018, Andeavor engaged Goldman Sachs to act as its financial advisor in connection with the contemplated merger. The engagement letter between Andeavor and Goldman Sachs provides for a transaction fee of $45 million, all of which becomes payable at consummation of the merger and is contingent upon consummation of the merger.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

64.    On May 29, 2018, MPC filed the Form S-4 registration statement (reviewed and approved by Andeavor's Board) with the SEC in connection with the Proposed Merger containing background information and the financial analyses prepared by Goldman Sachs for Andeavor and Barclays Capital Inc. for MPC in support of their fairness opinions favoring the Proposed Merger. The S-4 solicits the Company's shareholders to vote in favor of the Proposed Merger.

65.    Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material false and misleading statements or material misrepresentations or omissions. However, the S-4 misrepresents and/or omits material information that is necessary for the Company's shareholders

to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Financial Projections Prepared by Andeavor's Management**

66.    The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

67.    In order to make the projections included on pages 132-138 of the S-4 materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

68.    At the very least, the Company must disclose the segment reporting, as well as, line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) net income; (ii) net earnings; (iii) earnings per share; (iv) interest expense; (v) depreciation and amortization; (vi) amortization of intangibles; and (vii) a reconciliation of all

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, *available at* https://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

non-GAAP to GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the S-4 not misleading and leaves Andeavor shareholders without the necessary, material information to reach a full-informed decision concerning the Company, the fairness of the merger consideration, and, ultimately, whether to vote in favor of the Proposed Merger.

69.    The S-4 provides several projections for non-GAAP metrics, including EBITDA and Unlevered Free Cash Flow, but fails to disclose necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures for the following: (i) Unaudited Forecasted Financial Information of MPC; (ii) Unaudited Forecasted Financial Information of Andeavor; (iii) MPC Adjusted Unaudited Forecasted Financial Information; and (iv) Andeavor Adjusted and Modified Unaudited Forecasted Financial Information.

70.    Failure to provide complete and full disclosure of the line item projections for the metrics used to calculate the above-mentioned non-GAAP metrics leave Andeavor shareholders without the necessary, material information to reach a fully-informed decision concerning the Company, fairness of the merger consideration, and whether to vote in favor of the Proposed Merger.

71.    Further, Andeavor has previously provided its shareholders with the abovementioned information. For instance, the following charts are excerpted from Andeavor's press release on May 7, 2018, concerning the Company's financial results for the first quarter of 2018:

**Andeavor**
**Results of Consolidated Operations (Unaudited) (In millions, except per share amounts)**

| | Three Months Ended March 31, | | |
|---|---|---|---|
| | 2018 | | 2017 |
| Revenues | $ 10,300 | $ | 6,638 |
| Costs and Expenses: | | | |
| Cost of materials and other (excluding items shown separately below) | 8,609 | | 5,426 |
| Operating expenses (excluding depreciation and amortization) | 866 | | 655 |
| Depreciation and amortization expenses | 282 | | 226 |
| General and administrative expenses | 173 | | 135 |
| Loss on asset disposals and impairments | — | | 1 |
| Operating Income | 370 | | 195 |
| Interest and financing costs, net | (102) | | (98) |
| Equity in earnings of equity method investments | 10 | | — |
| Other income, net | 10 | | 11 |
| Earnings Before Income Taxes | 288 | | 108 |
| Income tax expense | 59 | | 21 |
| Net Earnings From Continuing Operations | 229 | | 87 |
| Earnings from discontinued operations, net of tax | 8 | | — |
| Net Earnings | 237 | | 87 |
| Less: Net earnings from continuing operations attributable to noncontrolling interest | 65 | | 37 |
| Net Earnings Attributable to Andeavor | $ 172 | $ | 50 |
| | | | |
| Net Earnings Attributable to Andeavor | | | |
| Continuing operations | $ 164 | $ | 50 |
| Discontinued operations | 8 | | — |
| Total | $ 172 | $ | 50 |
| | | | |
| Net Earnings per Share - Basic | | | |
| Continuing operations | $ 1.08 | $ | 0.43 |
| Discontinued operations | 0.05 | | — |
| Total | $ 1.13 | $ | 0.43 |
| Weighted average common shares outstanding - Basic | 152.9 | | 117.1 |
| | | | |
| Net Earnings per Share - Diluted | | | |
| Continuing operations | $ 1.07 | $ | 0.42 |
| Discontinued operations | 0.05 | | — |
| Total | $ 1.12 | $ | 0.42 |
| Weighted average common shares outstanding - Diluted | 153.8 | | 118.1 |

**Andeavor**
**Selected Segment Operating Data (Unaudited) (In millions)**

|  | | Three Months Ended March 31, | | |
| --- | --- | --- | --- | --- |
|  | | 2018 | | 2017 |
| **Earnings Before Income Taxes** | | | | |
| Marketing | $ | 128 | $ | 133 |
| Logistics | | 188 | | 150 |
| Refining | | 205 | | 34 |
| Total Segment Operating Income | | 521 | | 317 |
| Corporate and unallocated costs | | (151) | | (122) |
| Operating Income | | 370 | | 195 |
| Interest and financing costs, net | | (102) | | (96) |
| Equity in earnings of equity method investments | | 10 | | — |
| Other income, net | | 10 | | 11 |
| Earnings Before Income Taxes | $ | 288 | $ | 108 |
| **Depreciation and Amortization Expenses** | | | | |
| Marketing | $ | 22 | $ | 13 |
| Logistics | | 79 | | 58 |
| Refining | | 173 | | 148 |
| Corporate | | 8 | | 7 |
| Total Depreciation and Amortization Expenses | $ | 282 | $ | 226 |
| **Segment EBITDA** | | | | |
| Marketing | $ | 152 | $ | 146 |
| Logistics | | 271 | | 212 |
| Refining | | 387 | | 181 |
| Total Segment EBITDA | $ | 810 | $ | 539 |
| **Capital Expenditures** | | | | |
| Marketing | $ | 13 | $ | 6 |
| Logistics | | 83 | | 45 |
| Refining | | 312 | | 132 |
| Corporate | | 12 | | 43 |
| Total Capital Expenditures | $ | 420 | $ | 226 |
| **Turnaround Expenditures and Marketing Branding Costs** | | | | |
| Turnarounds and catalysts | $ | 203 | $ | 111 |
| Marketing branding | | 10 | | 18 |
| Total Turnaround Expenditures and Marketing Branding Costs | $ | 213 | $ | 129 |

**Andeavor**
**Reconciliation of Amounts Reported Under U.S. GAAP (Unaudited) (In millions)**

| | | Three Months Ended March 31, | | |
|---|---|---|---|---|
| | | 2018 | | 2017 |
| **Reconciliation of Net Earnings to EBITDA** | | | | |
| **Net Earnings** | $ | 237 | $ | 87 |
| Depreciation and amortization expenses | | 282 | | 226 |
| Interest and financing costs, net | | 102 | | 98 |
| Income tax expense | | 59 | | 21 |
| **EBITDA** | $ | 680 | $ | 432 |
| | | | | |
| **Reconciliation of Marketing Segment Operating Income to Marketing Segment EBITDA** | | | | |
| **Marketing Segment Operating Income** | $ | 128 | $ | 133 |
| Depreciation and amortization expenses | | 22 | | 13 |
| Other income, net | | 2 | | — |
| **Marketing Segment EBITDA** | $ | 152 | $ | 146 |
| | | | | |
| **Reconciliation of Logistics Segment Operating Income to Logistics Segment EBITDA** | | | | |
| **Logistics Segment Operating Income** | $ | 188 | $ | 150 |
| Depreciation and amortization expenses | | 79 | | 58 |
| Equity in earnings of equity method investments | | 3 | | 2 |
| Other income, net | | 1 | | 2 |
| **Logistics Segment EBITDA** | $ | 271 | $ | 212 |
| | | | | |
| **Reconciliation of Refining Segment Operating Income to Refining Segment EBITDA** | | | | |
| **Refining Segment Operating Income** | $ | 205 | $ | 34 |
| Depreciation and amortization expenses | | 173 | | 148 |
| Equity in earnings (loss) of equity method investments | | 7 | | (2) |
| Other income, net | | 2 | | 1 |
| **Refining Segment EBITDA** | $ | 387 | $ | 181 |

72.     The omission of the above-referenced projections and metrics renders the financial projections included in the S-4 materially incomplete and misleading. If a proxy or registration statement soliciting a shareholder vote discloses financial projections and valuation information, such projections must be complete and accurate.

**Financial Projections Prepared by MPC's Management**

73.     The S-4 provides several projections for non-GAAP metrics, including EBITDA and Unlevered Free Cash Flow, but fails to disclose necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures for the following: (i) MPC Management Projections of MPC

Financial Information; (ii) MPC Management Adjustment of Andeavor Prospective Financial Information; and (iii) MPC Financial Projections of the Combination of MPC and Andeavor.

74.    MPC has previously provided its shareholders with the above-mentioned information. For instance, the following chart is excerpted from MPC's press release on April 30, 2018, concerning its fourth quarter and fiscal year 2017 financial results:

**Consolidated Statements of Income (Unaudited)**

| | | Three Months Ended March 31 | | |
|---|---|---|---|---|
| *(In millions, except per-share data)* | | 2018 | | 2017 |
| **Revenues and other income:** | | | | |
| Sales and other operating revenues[a] | $ | 18,694 | $ | 16,134 |
| Sales to related parties | | 172 | | 154 |
| Income from equity method investments | | 86 | | 57 |
| Net gain on disposal of assets | | 2 | | 5 |
| Other income | | 30 | | 43 |
| Total revenues and other income | | 18,984 | | 16,393 |
| **Costs and expenses:** | | | | |
| Cost of revenues (excludes items below)[a] | | 17,370 | | 14,946 |
| Purchases from related parties | | 141 | | 122 |
| Depreciation and amortization | | 528 | | 536 |
| Selling, general and administrative expenses[b] | | 402 | | 390 |
| Other taxes | | 103 | | 108 |
| Total costs and expenses | | 18,544 | | 16,102 |
| **Income from operations**[b] | | 440 | | 291 |
| Net interest and other financial costs[a] | | 183 | | 149 |
| **Income before income taxes** | | 257 | | 142 |
| Provision for income taxes | | 22 | | 41 |
| **Net income** | | 235 | | 101 |
| Less net income attributable to: | | | | |
| Redeemable noncontrolling interest | | 16 | | 16 |
| Noncontrolling interests | | 182 | | 55 |
| **Net income attributable to MPC** | $ | 37 | $ | 30 |
| **Per-share data** | | | | |
| **Basic:** | | | | |
| Net income attributable to MPC per share | $ | 0.08 | $ | 0.06 |
| Weighted average shares: | | 476 | | 525 |
| **Diluted:** | | | | |
| Net income attributable to MPC per share | $ | 0.08 | $ | 0.06 |
| Weighted average shares: | | 480 | | 530 |
| **Dividends paid** | $ | 0.46 | $ | 0.36 |

**<u>Goldman Sachs' Analyses and Fairness Opinion</u>**

75.    With respect to Goldman Sachs' *Selected Companies Analysis*, the S-4 fails to disclose: (i) the basis or parameters used, if any, for Goldman Sachs' determination that (a) there

were only two companies (and not including the additional 3 companies referenced in the *Selected Transactions Analysis*) selected that were similar for purposes of the analysis and (b) the financial information of the selected companies were similar for purposes of the analysis; (ii) the parameters for determining the market size and product profile for the selected companies; (iii) the inputs and specific information used by Goldman Sachs for each of the *Selected Companies Analysis*.

76.    With respect to Goldman Sachs' *Premia Analysis*, the S-4 fails to disclose the implied premium for each of the selected transactions.

77.    With respect to Goldman Sachs' *Selected Transactions Analysis*, the S-4 fails to disclose: (i) the reasons or criteria used for each of the selected transactions; and (ii) why the additional companies in this analysis are not included or limited to the companies in the comparable companies' analysis.

78.    With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis—Andeavor Standalone*, the S-4 fails to disclose: (i) how Goldman Sachs determined the weighted average cost of capital; (ii) the reasons for applying discount rates ranging from 8.5% to 9.5%; and (iii) the reasons for applying perpetuity growth rates ranging from 0% to 1.0%.

79.    With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis—Implied Valuation Uplift*, the S-4 fails to disclose: (i) how Goldman Sachs determined the weighted average cost of capital; (ii) the reasons for applying discount rates ranging from 8.5% to 9.5%; and (iii) the reasons for applying perpetuity growth rates ranging from 0% to 1.0%.

80.    With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis—Andeavor Standalone*, the S-4 fails to disclose: (i) the reasons for applying a range of one-year forward EV/EBITDA multiples ranging from 6.5x to 7.5x to estimated EBITDA for Andeavor for 2019 and 2020; and (ii) the reasons for applying an illustrative discount rate of 10%.

81.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis—Implied Valuation Uplift*, the S-4 fails to disclose: (i) the reasons for applying a range from 6.5x to 7.5x estimated EBITDA for fiscal years 2019 and 2020; and (ii) the reasons for applying an illustrative discount rate of 9.7%.

**Barclay's Analyses and Fairness Opinion**

82.     With respect to Barclay's *Discounted Cash Flow Analysis* of MPC, the S-4 fails to disclose how Barclay's determined, and the reasons for using, the following numbers and ranges: (i) discount rates ranging from 8.50% to 10.00%; (ii) the weighted average cost of capital; (iii) estimates of unlevered free cash flow; (iv) perpetuity growth rates of 2.0%; (v) a 24% marginal tax rate assumption; and (vi) a terminal EBITDA multiple reference range of 7.50x to 8.50x.

83.     With respect to Barclay's *Selected Companies Analysis*, the S-4 fails to disclose: (i) the basis or parameters used, if any, for Barclay's determination that (a) the companies selected were similar for purposes of the analysis and (b) the financial information of the selected companies were similar for purposes of the analysis; (ii) the parameters for determining the market size and product profile for the selected companies; (iii) the inputs and specific information used by Barclay's in calculating: (a) Refining C-corp Comparable Company Enterprise Value Multiple of EBITDA Reference Ranges: and (b) Midstream Comparable Company Enterprise Value Multiple of EBITDA Reference Ranges: and (v) the inputs and specific information used by Barclay's in calculating the specific Enterprise Value Multiple of EBITDA for each of the selected companies.

84.     With respect to Barclay's *Selected Comparable Transactions Analysis*, the S-4 fails to disclose: (i) the reasons or criteria used for each of the selected transactions; (ii) the Precedent Transaction Enterprise Value Multiple of EBITDA Reference Ranges one year and two year

forward for each of the selected transactions; and (iii) the Precedent Transaction Enterprise Value Multiple of EBITDA trailing twelve months: for each of the selected transactions.

85.    With respect to Barclay's *Sum of Parts Analysis*, the S-4 fails to disclose: (i) the reasons or criteria used for each of the selected transactions and companies; (ii) the specific Multiples for each of the comparable companies and transactions used in the referenced ranges for both MPC and Andeavor in connection with the various segments including (a) Refining, (b) Retail/Marketing, and (c) Midstream.

86.    With respect to Barclay's *Equity Analyst Target Price Analysis*, the S-4 fails to disclose which public equity research analysts were reviewed and each of their specific price targets.

87.    With respect to Barclay's *Relative Contribution Analysis*, the S-4 fails to disclose equity, the analyst estimates for Andeavor that were adjusted to reflect the expensing of turnaround capital expenditures.

88.    With respect to Barclay's *Premiums Paid Analysis*, the S-4 fails to disclose the implied premium for each of the 71 selected U.S. corporate transactions since 2010 and the reasons for any parameters used in selecting the 71 transactions.

89.    With respect to the various analysis, the omitted information and key inputs are material to Andeavor shareholders, and their omission renders the summary of the financial advisors' fairness opinions materially incomplete and misleading.

## COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER)

90.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

91.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

92.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

93.     Defendants have issued the S-4 with the intention of soliciting stockholders support for the Proposed Merger. Each Defendant reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, among other things, the financial projections for the Company and the fairness opinion of Andeavor's financial advisor, UBS.

94.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each Defendant, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4,

but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

95.    Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

96.    Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading. Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the S-4 and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

97.    Defendants were, at the very least, negligent in preparing and reviewing the S-4. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

98.    The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

99.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT)**

100.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

101.     The Individual Defendants acted as controlling persons of Andeavor within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Andeavor, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

102.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

103.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The S-4 at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

104.    In addition, as set forth in the S-4 sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

105.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

106.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

107.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the stockholders vote on the Proposed Merger or consummating the Proposed Merger, unless and

until the Company discloses the material information discussed above which has been omitted from the S-4;

C. Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: June 26, 2018                    Respectfully Submitted,

                                        NAPOLI SHKOLNIK, LLC
                                        */s/ R. Joseph Hrubiec*
                                        R. Joseph Hrubiec, Esq. (#5500)
                                        919 Market Street
                                        Suite 1801
                                        Wilmington, Delaware 19801
                                        (302) 330-8025

                                        Aaron Brody (*Pro Hoc Vice Forthcoming*)
                                        **STULL, STULL, & BRODY**
                                        6 East 45th Street
                                        New York, NY 10017
                                        Telephone: (212) 687-7230
                                        Facsimile: (212) 490-2022
                                        Email: abrody@ssbny.com

                                        ***Attorneys for Plaintiff***